CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUL 28 2011

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| BENJAMIN WILLIAM FAWLEY, | ) | Civil Action No. 7:09-cv-0041 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| GENE JOHNSON, et al., | ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) | Senior United States District Judge |

Benjamin William Fawley, a Virginia inmate housed in New Mexico and proceeding pro

se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 with jurisdiction vested in 28

U.S.C. § 1343. Plaintiff names as defendants Gene Johnson, former Director of the Virginia

Department of Corrections ("VDOC"); R.C. Mathena, Warden of the Keen Mountain

Correctional Center ("KMCC"); Larry Huffman, a VDOC Regional Director; D. Vass, a

Treatment Program Supervisor; Ms. Rife, a Protective Custody Unit Counselor; and "Other Jane

and John Doe Officials and Staff." The non-Doe defendants ("defendants") filed motions for

summary judgment, and plaintiff responded, making the matter ripe for disposition. After

reviewing the matter, I terminate Other Jane and John Doe Officials and Staff, pursuant to 28

U.S.C. § 1915A(b)(1), and grant the remaining defendants' motions for summary judgment.

I.

A.   PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff instituted this action in February 2009 when he filed his Original Complaint, and

the court received his Amended Complaint in March 2009. In June 2009, plaintiff sought leave

to file a Second Amended Complaint. The court granted the request, giving plaintiff twenty

days' leave to file the pleading and informed him that the Second Amended Complaint would

replace his prior submissions. Plaintiff subsequently filed his Second Amended Complaint with

exhibits, which were served on the defendants and is presently challenged by their motion for summary judgment.[1] Plaintiff complains that prison officials failed to mail his state-court pleadings, VDOC and facility policies barred him reasonable access to courts to challenge his state-court criminal conviction, and correctional officers seized property that he considered legal materials and thus frustrated his access to courts. Plaintiff requests as relief damages and the reinstatement of his right to appeal his state criminal conviction from a Virginia circuit court to the Court of Appeals of Virginia.

B.    HISTORY OF PLAINTIFF'S POST-CONVICTION REMEDIES

Because plaintiff argues that the alleged denial of reasonable access to courts negatively impacted his challenges to his criminal conviction, a review of his criminal proceedings is necessary. The records of the instant case and relevant, related judicial proceedings reveal the following facts.[2]

On August 11, 2006, the Circuit Court of Mathews County entered plaintiff's criminal judgment following his Alford[3] plea made pursuant to a written agreement. Plaintiff pleaded to murder in the second degree, in violation of Virginia Code § 18.2-32, as charged by an amended indictment.

On August 29, 2006, a non-attorney, to whom plaintiff granted a power of attorney, filed

---

[1] Plaintiff named as a defendant in his Original Complaint "Other Jane and John Doe Officials and Staff" as a defendant. Plaintiff fails to describe any claim against this defendant in his Second Amended Complaint, which I construe as plaintiff's intention to abandon any claim against it and terminate it as a defendant. Alternatively, I find that plaintiff fails to state a claim upon which relief may be granted against this defendant, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), as discussed below.

[2] See, e.g., Fawley v. Johnson, No. 2:09-cv-00452 (E.D. Va.).

[3] See North Carolina v. Alford, 400 U.S. 25, 37-38 (1970) (noting that a defendant with an "Alford plea" asserts innocence but admits that sufficient evidence exists which could likely convince a judge or jury to find the defendant guilty); Perry v. Commonwealth, 33 Va. App. 410, 412, 533 S.E. 2d 651, 652 (2000) (recognizing that Virginia courts treat an Alford plea as having the same preclusive effect as a guilty plea).

a "motion to suspend judgment" with the circuit court on plaintiff's behalf. This motion stated that plaintiff was moved to the custody of the VDOC on August 17, 2006.

Nearly a year and a half later on May 20, 2008, plaintiff filed a pro se petition for a belated appeal with the Supreme Court of Virginia. The Clerk of the Supreme Court of Virginia wrote plaintiff a letter in response, dated June 6, 2008, advising him that his petition fell outside the Court's jurisdiction and recommended he contact the Court of Appeals of Virginia, pursuant to Va. Code § 19.2-321.1.[4] The Clerk noted, however, that deadline for filing the request with the Court of Appeals already expired.

On June 23, 2008, plaintiff allegedly filed a petition for appeal to the Court of Appeals of Virginia by depositing his pleadings in the KMCC mail system. This mailing is noted on the institution's outgoing mail log, but the Court of Appeals of Virginia acknowledged in a letter dated June 12, 2009, that its Clerk had no record of ever receiving any correspondence from plaintiff in 2008.

On July 5, 2008, plaintiff filed a petition for a writ of habeas corpus with the Supreme Court of Virginia, arguing that his plea was not voluntary and his counsel provided ineffective assistance. Plaintiff argued that trial counsel were ineffective because they did not note an appeal when plaintiff asked for one. Plaintiff then granted power of attorney to the non-attorney to file on his behalf with the circuit court a motion to suspend judgment after counsel refused to note an appeal. However, the Supreme Court of Virginia held that counsel did not provide ineffective

---

[4] This statute provides a criminal defendant who, inter alia, did not file an appeal from the circuit court "due to the error, neglect, or fault of counsel representing the appellant, or of the court reporter, or of the circuit court or an officer or employee thereof" the opportunity to ask the Court of Appeals for leave to a delayed appeal "within six months after . . . the circuit court judgment sought to be appealed has become final[.]" Va. Code § 19.2-321.1(A). However, these provisions do "not apply to cases in which the appellant is responsible, in whole or in part, for the

assistance because he benefitted from a plea agreement waiving the right to appeal and petitioner

did not objectively and timely demonstrate his intent to appeal. Fawley v. Director, No. 081341,

slip op. at 2 (Va. Jan. 14, 2009). The Supreme Court of Virginia also rejected plaintiff's claim

that his plea was not knowingly or voluntarily entered. Id. The Supreme Court of Virginia found

plaintiff's challenge to the indictment waived because his knowing and voluntary guilty plea

waived all non-jurisdictional defenses antecedent to the guilty plea. Id. at 3. The Supreme Court

of Virginia granted the Commonwealth's motion to dismiss on January 14, 2009, because

plaintiff's claims lacked merit.

On August 11, 2008, plaintiff, by counsel, filed a second petition for a writ of habeas

corpus with the circuit court.[5] The circuit court dismissed the petition on December 4, 2008, as

both time barred and as successive, pursuant to Virginia Code § 8.01-654(A)(2) and (B)(2).

Fawley v. Commonwealth, No. CL08000069-00 (Cir. Ct. Mathews Co. Dec. 4, 2008). Plaintiff

did not appeal the dismissal to the Supreme Court of Virginia.

On July 27, 2009, plaintiff filed his third petition for a writ of habeas corpus with the

circuit court. The circuit court dismissed this petition on October 9, 2009, again as both time

barred and successive. Fawley v. Va. Dep't of Corr., No. CL09000056-00 (Cir. Ct. Mathews Co.

Oct. 9, 2009). Petitioner appealed to the Supreme Court of Virginia, which dismissed the appeal

on March 18, 2010, and refused plaintiff's petition for rehearing on June 16, 2010. Fawley v.

Johnson, No. 09-2631 (Va. Mar 18, 2010, & Jun. 16, 2010).

---

error, neglect, or fault causing loss of the original opportunity for appeal, nor shall it apply in cases where the claim of error, neglect, or fault has already been alleged and rejected in a prior judicial proceeding." Id. § 19.2-321.1(D).
[5] In this petition, plaintiff acknowledged that the circuit court had not yet adjudicated his motion to suspend judgment and it had "been effectively denied."

On August 31, 2009, plaintiff filed his federal petition for a writ of habeas corpus with the United States District Court for the Eastern District of Virginia. The District Court adopted a magistrate judge's recommendation for dismissal over plaintiff's objections because the federal statute of limitations expired. Fawley v. Johnson, No. 2:09-cv-00452 (E.D. Va. Jun. 16, 2010). The magistrate judge determined that plaintiff had until September 10, 2007, to file his federal habeas petition. The Court of Appeals for the Fourth Circuit denied plaintiff a Certificate of Appealability, dismissed his subsequent appeal, and denied his petition for a rehearing. Fawley v. Johnson, No. 10-6896 (4th Cir. Sept. 7, 2010, & Oct. 19, 2010).

C.    THE APPLICABLE POLICIES DURING PLAINTIFF'S INCARCERATION

Plaintiff was housed in segregation at the Powhatan Correctional Center ("PCC") from August 17, 2006, until October 19, 2006. From then until February 2009, plaintiff was an inmate at KMCC and assigned to protective custody and segregation, which are both considered forms of special housing. In March 2009, the VDOC transferred plaintiff from KMCC to a correctional facility in New Mexico, pursuant to Virginia's Interstate Corrections Compact. See Va. Code § 53.1-216.

1.    VDOC Policies

Division Operating Procedure ("DOP") 822 ("Isolation, Segregation and Detention"), dated April 16, 1992, was effective when plaintiff arrived at PCC and KMCC.[6] Per DOP 822 § 7.5 (7), inmates assigned either to isolation or to segregation would not be prohibited from litigating on their own behalf and would have access to institutional legal services as described by institutional operating procedures. These inmates would also be allowed unlimited attorney

---

[6] A VDOC Deputy Director who is not a defendant authorized this policy.

visits and permission for legal phone calls as described by institutional operating procedures. DOP 822 also provided that a warden or superintendent holds primary responsibility for "ensuring compliance with this operating procedure at the institutional level."

On December 1, 2006, DOP 822 was superseded by DOP 861.3 ("Special Housing").[7] DOP 861.3 provides that offenders assigned to special housing will not be prohibited from litigating on their own behalf, should be afforded access to legal services including the facility attorney and the use of law library materials, and should be provided information on how to access legal services.

2.    PCC Policy

Plaintiff was assigned to segregation at PCC from August 17, 2006, until October 19, 2006. When Plaintiff arrived at PCC, Institutional Operating Procedure ("IOP") 867, dated November 15, 2005, was effective. This policy prevents special housing inmates from having physical access to the law library collections. Instead, a special housing inmate wanting legal materials sends a Law Library Material Request Form to the Operations Officer via institutional mail. The inmate can request up to five items at a time, which are checked out for three days at a time. An inmate law clerk collects the requested materials, delivers it to the Institutional Ombudsman, who delivers it to the housing unit correctional officer, who delivers it to the inmate. The inmate must sign for the materials before receipt.

This policy also permitted inmates to write to or to meet the institutional attorneys assigned by the local circuit court. The policy noted:

---

[7] Two VDOC Deputy Directors who are not defendants authorized this policy.

> In cases where the institutional attorney(s) is/are not visiting frequently
> enough to handle the inmate needs in a reasonable time period, the inmate
> should notify the Operations Officer via [an] inmate request form. . . .
> The Operations Officer will contact the institutional attorney to advise of
> the inmate complaint and request assistance. If a problem persists, the
> Operations Officer will advise the Warden and the local Commonwealth
> Attorney to request the Court[']s remedy to the situation. If there is
> insufficient response from the Commonwealth Attorney, the Warden
> should contact the Attorney General's office. Records of all attempts to
> remedy the situation will be maintained accordingly.

PCC IOP 867(IV)(B)(b).

    3.    KMCC Policies

Plaintiff was housed in KMCC's special housing from October 2006 through February

2009. KMCC had two relevant policies in effect during that time: KMCC IOP 867 ("Legal

Services/Assistance"), dated April 7, 2006, was effective when plaintiff arrived at KMCC and

KMCC LOP 841.B[8] was effective between March 21, 2008, and February 2009, when he left

KMCC.

Both KMCC IOP 867 and KMCC LOP 841.B, which were approved by former KMCC

Wardens and defendant Huffman, ensured that KMCC special housing inmates, like plaintiff,

would have access to legal materials by requesting materials with a Special Housing Law Library

Request Form sent to the Treatment Program Supervisor's office via institutional mail. Special

housing inmates would receive only a copy of the requested item, not the original. The inmate

would receive up to seven items in a week, and staff would not deliver additional items until the

---

[8] This LOP was superseded on May 1, 2007, with minor changes. The May 1, 2007, version differed only in that that the words "inmate" and "inmates" were replaced with the words "offender" and "offenders." A new policy superseded LOP 841.B on December 1, 2009, after plaintiff already left KMCC.

inmate returns all checked-out items. However, the Treatment Program Supervisor may make exceptions to the number of items and length of time if an inmate can verify a court deadline.

The policies also provided the names and mailing addresses for the two institutional attorneys appointed by the local circuit court. These attorneys were available to special housing inmates for consultation about legal matters related to their incarceration. Special housing inmates could contact the attorney directly or forward an Inmate Request Form to the Assistant Warden, who forwarded the request to an institutional attorney.

From March 1, 2007, through February 25, 2009, plaintiff made numerous requests for legal materials while he was housed at KMCC. For example, plaintiff requested legal materials about conditions of confinement, reasonable access to courts, <u>Alford</u> pleas, the validity of guilty pleas, and withdrawing a Virginia guilty plea.

On June 26, 2008, the institutional mail staff stamped and mailed plaintiff's legal documents addressed to the Court of Appeals of Virginia, Attn: Cynthia L. McCoy, Clerk, 109 North 8th, fourth floor, Richmond, VA 23219-2305. Staff also mailed plaintiff's other documents to Merritt W. Foster Jr., MD, 414 West Franklin Street, Richmond, VA 23221.

D.    PLAINTIFF'S CLAIMS

1.    Claim One

Plaintiff alleges that the VDOC policies and rules were overly restrictive while he was in segregation at PCC and KMCC and interfered with his reasonable access to courts. Plaintiff reasons that KMCC staff interfered with his direct appeal because the mail log shows prison officials' receipt of appeal documents for mailing but they were never received by any state court.

Plaintiff wanted to file a direct appeal of his conviction with the Court of Appeals of Virginia, but his appeal paperwork was instead sent to the Supreme Court of Virginia. Plaintiff tried to correct this error by resending the appropriate paperwork via the KMCC mailing system to the Court of Appeals of Virginia. Although plaintiff's second attempt to file a direct appeal was noted in the institutional mail log, the paperwork never reached the Court of Appeals of Virginia. Plaintiff faults VDOC staff for his mail not arriving at the Court of Appeals of Virginia and for not providing him while in PCC's and KMCC's special housing units access to legal information or assistance to know which court to file his appeal.

2.    Claim Two

Plaintiff also faults VDOC and facility policies for frustrating his access to legal information or legal assistance to properly and fully ascertain and assert his constitutional claims in both his direct appeal and state habeas petition.[9] Plaintiff argues that KMCC LOP 841.B denied him meaningful access to legal materials, not that the policy completely barred his access to legal materials, because he received only copies of just seven items per week. Plaintiff claims that denying him access to the physical books violated his constitutional rights because he could request only certain pages with an exact cite. The exact cite system required petitioner to request legal information with the correct legal citation to the materials, but plaintiff could not provide a citation because he did not have legal assistance or physical access to a law library and did not have any information by which to obtain a citation. Without access to the books, he was not able to know what chapters, pages, or rules to request. Plaintiff acknowledges he was able to request

_____

[9] Plaintiff also argues that the lack of information hindered his ability to draft the Original Complaint in this action, which he since remedied with the Second Amended Complaint.

exact cites from guessing and from other inmates' advice. Once plaintiff received a donated copy of a law journal, he then requested materials cited in the journal.

Plaintiff argues that no institutional attorney was available to inmates while he was in PCC although the PCC-inmate handbook he received listed two institutional attorneys. Plaintiff admits that he wrote to one of the PCC's institutional attorneys. While at KMCC, plaintiff wrote to one of the institutional attorneys available to him, but he was dissatisfied with him because he did not give plaintiff "actual assistance" to file pleadings.

Without access to legal information, plaintiff was allegedly unable to prepare his direct appeal. His inability to prepare his direct appeal impacted his original habeas petition because he believes some claims were dismissed because he did not appeal them.[10] When plaintiff later learned about other potential claims, he was unable to obtain relief because his second state habeas petition was dismissed as successive because he could have known of the claims at the time he filed the first petition. Plaintiff allegedly could not research the law about the prison-mailbox rule or about indictments to learn that his indictment violated due process. Although plaintiff knew "something" was wrong with his indictment, he could not articulate the issues without access to legal information. Plaintiff faults the VDOC's "exact cite system" for denying him access to legal materials to prepare his first state habeas petition.

In support of his denial of access to courts claim, plaintiff alleges his actual injuries were the denial of copying services for the state habeas petition's exhibits and the denial of access to the law library to research about Virginia habeas relief, falsified court records, and a state court's

---

[10] As previously noted, claims raised in his first state habeas petition were dismissed as meritless, not for failing to file a direct appeal.

failure to notify him of a hearing or decision. Plaintiff would have raised in his habeas petition that his guilty plea was involuntary because defense counsel withheld information leading to a possible defense; counsel or the prosecutor withheld DNA tests and proffered misleading evidence as blood stains; the indictment was invalid; counsel failed to file a notice of appeal or represent plaintiff at a hearing; and the circuit court failed to inform plaintiff of a hearing or denial of his motion to suspend judgment.

     3.     Claim Three

Plaintiff alleges that KMCC staff obstructed plaintiff's reasonable access to courts by their cell searches and seizures of eight CDs of legal materials and two newspaper articles.[11] One of the newspaper articles included a quote from plaintiff's trial counsel that effective assistance of counsel was hindered by the amount of money he received from the state as appointed counsel. Another newspaper article described a police report that was not included in plaintiff's case file, in violation of the effective assistance of counsel and due process. Plaintiff also complains that the defendants did not respond to his claim that unspecified officers denied him access to pens, which prevented him from filing grievances, and "denying court access to documents to be submitted as exhibits."

E.    PLAINTIFF'S USE OF VDOC GRIEVANCE PROCEDURES

DOP 866.1, Inmate Grievance Procedure, is a mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The process provides correctional administrators means to identify potential problems and, if necessary, correct those problems in a timely manner. All issues are grievable except issues

---

[11] The record reflects that plaintiff acknowledged the CDs were returned to him on August 21, 2008.

about policies, procedures, and decisions of the Virginia Parole Board; disciplinary hearing penalties and/or procedural errors; state and federal court decisions, laws, and regulations; and other matters beyond the VDOC's control.

Inmates are oriented to the inmate grievance procedure when they enter the VDOC. Prior to submitting a grievance, the inmate must demonstrate that he has made a good faith effort to informally resolve his complaint by submitting an informal complaint form available in their housing unit. If not resolved, the inmate must file a regular grievance within thirty calendar days from the date of occurrence or incident. Only one issue per grievance will be addressed. Regular grievances may receive three levels of review. A facility's Warden or Superintendent conducts the first, "Level I" review of the grievance. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II, which is done by the Regional Ombudsman/Director. For most issues, Level II is the final level of review. For the few issues appealable to Level III, the Deputy Director or Director of the VDOC conducts the final review of the regular grievance.

Plaintiff submitted an informal complaint on August 29, 2008. Plaintiff claimed that 8 CD's containing legal materials were confiscated from him. However, he did not submit a regular grievance about the confiscation of this property.[12]

II.

A.    SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

---

[12] The defendants do not describe other grievances plaintiff may have filed regarding other claims.

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[13] Material

facts are those necessary to establish the elements of a party's cause of action. Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if, in

viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the

non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The

moving party has the burden of showing – "that is, pointing out to the district court – that there is

an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477

U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth

specific facts admissible as evidence that demonstrate the existence of a genuine issue of fact for

trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record

as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v.

Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a

reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S.

at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not

appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky.

Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991). A court may neither resolve disputed

facts or weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor

make determinations of credibility, Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).

Rather, the party opposing the motion is entitled to have his or her version of the facts accepted

---

[13] The parties received reasonable and explicit notice that the court may convert a motion to dismiss that references matters outside the pleadings into a motion for summary judgment when the Clerk issued a timely Roseboro notice. See Fed. R. Civ. P. 12(d); Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

as true and, moreover, to have all internal conflicts resolved in his or her favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Furthermore, a party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995). Moreover, a plaintiff cannot rely on a response to a motion for summary judgment to act as an amendment to correct deficiencies in a complaint challenged by a defendant's motion for summary judgment. See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); Barclay White Skanska, Inc. v. Battelle Mem'l Inst., 262 F. App'x 556, 563 & n.16 (4th Cir. 2008) (No. 07-1084), available at 2008 WL 238562, at *6, 2008 U.S. App. LEXIS 1916, at *18-20 (noting that other circuits similarly prohibit a plaintiff from raising new claims in opposition to summary judgment and noting that district courts within the Fourth Circuit have adopted Gilmour).

B.    THE STATUTE OF LIMITATIONS BARS CLAIMS ACCRUING BEFORE FEBRUARY 12, 2007.

Section 1983 adopts the statute of limitations that the forum state uses for general personal injury cases. Owens v. Okure, 488 U.S. 235, 249-50 (1989). Virginia's statute of limitations applicable to § 1983 actions is two years. See Va. Code § 8.01-243(A). However, federal law itself governs the question of when a cause of action accrues. See Cox v. Stanton,

14

529 F.2d 47, 50 (4th Cir. 1975). A federal cause of action accrues when "the plaintiff has 'a complete and present cause of action'" when the plaintiff "can file suit and obtain relief." Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 192, 201 (1997). See Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc) (holding that a cause of action under § 1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action"). Plaintiff filed his Original Complaint no earlier than on February 12, 2009, the date he signed the Original Complaint and may have placed it in the prison mailing system. See Houston v. Lack, 487 U.S. 266 (1988) (describing the prison-mailbox rule). Therefore, plaintiff's instant claims must have accrued after February 12, 2007 for them to be timely filed.

Claim One accrued in June 2008 when plaintiff received the letter from the Clerk of the Supreme Court of Virginia. The letter advised him that he sent his pleadings to the wrong appellate court and that Virginia law would bar him from a late appeal. Therefore, Claim One is not barred by the statute of limitations as the basis of the claim arose after February 12, 2007.

For Claim Two, plaintiff claims that he was denied physical access to law books while he was in special housing at PCC and KMCC and that this denial was due to the restrictive policies and procedures for inmates in special housing. Plaintiff was in segregation at PCC from August 17, 2006, until October 19, 2006. From then until February 2009, plaintiff was in special housing at KMCC.

Plaintiff's claims based on conduct at PCC from August 2006 to October 2007 fall beyond the statute of limitations. By the time plaintiff left PCC in October 2006, he had

15

knowledge of his alleged frustrated reasonable access to courts for law library materials or difficulty contacting an institutional attorney. Accordingly, plaintiff's cause of action about PCC accrued before February 2007, and claims about PCC are time barred.

Plaintiff's claims based on conduct at KMCC from October 19, 2006, to February 12, 2007, fall beyond the statute of limitations because he recognized by February 2007 the he did not have physical access to legal materials necessary to challenge his August 2006 conviction. Plaintiff was in KMCC special housing from October 2006 through February 2009, and plaintiff recognized his alleged frustrated physical access to legal materials soon after his arrival in KMCC's special housing. Accordingly, Claim Two about KMCC is also time barred.

Plaintiff argues that he should not be time barred because the circuit court withheld the "notification of hearing" issued on September 18, 2006, until December 2008. Thus, plaintiff concludes that he could not have known of the denial of reasonable access to courts until December 2008, which would fall within the statute of limitations.[14] However, plaintiff recognized in August 2006 that he would be pursuing his direct appeals and collateral attacks without the assistance of trial counsel when he allegedly asked them to file an appeal, they allegedly refused, and plaintiff sought a non-attorney's assistance to challenge his criminal judgment. Plaintiff would have suffered the harm necessary to bring the action by September 11, 2007, which is thirty days after the circuit court entered his conviction. See Va. Sup. Ct. R. 5A:6(a) (stating an appeal from the trial court to the Court of Appeals is allowed only if the appellant files a notice of appeal within thirty days of the final judgment). Although Virginia law

---

[14] Even though plaintiff alleges he could not have known of its denial before December 2008, his habeas counsel for his second habeas petition acknowledged in August 2008 that the circuit court had already "effectively denied" the motion.

allows a convict to ask permission for a belated appeal, it also prohibits such permission when the convict "is responsible, in whole or in part, for the error, neglect, or fault causing loss of the original opportunity for appeal. . . ." Va. Code § 19.2-321.1(D). The Supreme Court of Virginia already determined that plaintiff's trial counsel did not perform deficiently for not noting an appeal of the conviction. Fawley v. Director, No. 081341, slip op. at 2 (Va. Jan. 14, 2009). Plaintiff's strategic decision to challenge the conviction in the circuit court by relying on a non-attorney with a "power of attorney" to file pleadings on his behalf instead of filing a notice of appeal with the circuit court constitutes, at a minimum, the partial negligence or fault that would have prevented plaintiff from receiving a belated appeal. See Va. Code § 8.01-271.1 (a party represented by an attorney that files a motion in court must have a Virginia attorney's signature or a party proceeding pro se must sign the document); Va. Sup. Ct. R. 1:5 (counsel defined as an attorney licensed to practice law in Virginia by the Virginia State Bar); Kone v. Wilson, 272 Va. 59, 62-63, 630 S.E.2d 744, 745-46 (2006) (stating a pleading signed by a representative who is not authorized to practice law in Virginia is invalid and without legal effect). See also Va. Code § 54.1-3904 (making the unauthorized practice of law a Class 1 misdemeanor). Accordingly, the claim did not accrue in December 2008, and the statute of limitations bars Claim Two.

For Claim Three, plaintiff alleges that KMCC staff obstructed plaintiff's access to courts by seizing eight CDs of legal materials and two newspaper articles. Plaintiff was at the KMCC by October 2006, and the CDs were returned to plaintiff in August 2008. It appears in a light most favorable to plaintiff that this claim accrued in August 2008, within the two year statute of limitations.

C.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before bringing a claim under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 85 (2006) (stating that "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory"); Porter v. Nussle, 534 U.S. 516, 532 (2002) (stating that the PLRA applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"); Booth v. Churner, 532 U.S. 731, 739 (2001) (finding that the PLRA requires administrative exhaustion prior to the filing of a federal civil rights suit even if the form of relief the inmate seeks is not available through exhaustion of administrative remedies). Pursuant to the PLRA, prisoners must not just initiate timely grievances but must also timely appeal through all levels of available administrative review any denial of relief. Woodford, 548 U.S. at 93 (holding that the PLRA requires "proper exhaustion" of institutional administrative remedies before filing any federal suit challenging prison conditions). To properly exhaust a claim, an inmate must file grievances with sufficient detail to alert prison officials of the possible constitutional claims which are now alleged as a basis for relief. See Smith v. Rodriguez, No. 7:06-cv-00521, 2007 U.S. Dist. LEXIS 43571, 2007 WL 1768705 (W.D. Va. June 15, 2007) (citing McGee v. Fed. Bureau of Prisons, 118 F. App'x 471, 476 (10th Cir. 2004)). Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 681 (4th Cir. 2005).

Plaintiff submitted an informal complaint on August 29, 2008, claiming that eight CDs of legal materials were confiscated from him. However, he did not submit a regular grievance

about this confiscation. In the VDOC, filing a regular grievance for Level I review is a prerequisite to exhaust the VDOC's administrative remedies. Plaintiff's failure to file a regular grievance would make this claim unexhausted and subject to dismissal.

However, plaintiff alleges in his response to the motion for summary judgment that he was unable to file any additional grievances because KMCC staff took away all his pens, preventing him from drafting the grievance forms. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore, 517 F.3d at 725. Thus, "when prison officials prevent inmates from using the administrative process . . ., the process that exists on paper becomes unavailable in reality." Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred in failing to consider prisoner's claim that he was unable to submit a grievance, and therefore lacked available administrative remedies, because prison employees refused to provide him with the necessary forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (stating administrative remedy rendered unavailable when prison officials prevent prisoner from using it). A district court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials." Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007). See Kaba, 458 F.3d at 686 (finding affidavits of the prison officials and Kaba's other grievances and filings merely turn into a dispute with evidence, requiring the fact-finder to evaluate the credibility of the witnesses and other evidence in the record); Lewis v. Washington, 300 F.3d 829, 831-32 (7th Cir. 2002) (deemed administrative remedies exhausted when prison officials failed to respond to inmate grievances because those remedies had become "unavailable"); Foulk v. Charrier, 262 F.3d 687,

698 (8th Cir. 2001) (same). Given the particular perspectives required when considering a motion for summary judgment, I decline to dismiss Claim Three based on unexhausted administrative remedies because plaintiff alleges that prison officials prevented him from filing grievances.[15]

D.    PLAINTIFF IS NOT ENTITLED TO RELIEF AGAINST ANY OF THE DEFENDANTS IN EITHER THEIR PERSONAL OR OFFICIAL CAPACITIES.

    1.    Defendant "Other Jane and John Doe Officials and Staff" is not a proper party to this § 1983 action.

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). It is well settled that only a "person" may act under color of state law, and therefore, a defendant in a § 1983 action must qualify as a "person." A group of individuals, whether as an agency, a department, or a staff of nurses, officers, or officials, is not a "person" under § 1983 to obtain relief. See Barnes v. Baskerville Corr. Cen. Med. Staff, No. 3:07CV195, 2008 U.S. Dist. LEXIS 48726, 2008 WL 2564779 (E.D. Va. June 25, 2008); Ferguson v. Morgan, No. 90 Civ. 6318, 1991 U.S. Dist. LEXIS 8295, 1991 WL 115759 (S.D.N.Y. June 20, 1991). See also Will v. Michigan Dep't of State Police, 491 U.S. 58, 70 (1989) (describing a "person" for § 1983). Accordingly, plaintiff fails to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), against defendant "Other Jane and John Doe Officials and Staff," and it is terminated as a defendant.

---

[15] Defendants did not describe unexhausted administrative remedies for plaintiff's other claims.

2.    Plaintiff fails to state a claim upon which relief may be granted against Johnson, Vass and Rife; about his first claim about misdirected or undelivered mail; and about his third claim about the seizure of materials from his cell.

Section 1983 requires a showing of personal fault on the part of a defendant either based on the defendant's personal conduct or another's conduct in execution of the defendant's policies or customs. See Fisher v. Washington Metropolitan Area Transit Author., 690 F.2d 1133, 1142-43 (4th Cir. 1982), abrogated on other grounds by Cnty. of Riverside v. McLaughlin, 500 U.S. 44 (1991). Although plaintiff names Johnson, Vass, and Rife as defendants, he fails to relate their positions or personal actions to the challenged policies or alleged deprivations of reasonable access to courts. Because Johnson was Director of the VDOC during the alleged events does not by itself impose § 1983 liability.[16] See Vinnedge v. Gibbs, 550 F.2d 926, 929 (4th Cir. 1977) (stating supervisory liability under § 1983 may not be predicated only on the theory of respondeat superior). Plaintiff fails to describe how any defendant relates to either the PCC mailroom staff's alleged mishandling of outgoing mail or the United States Postal Service's alleged failure to deliver his appeal documents. Plaintiff also fails to describe how any defendant relates to correctional officers' seizure of his personal property regarding his criminal conviction. Accordingly, plaintiff fails to state a claim upon which relief may be granted against Johnson, Vass, and Rife; against any defendant for his first claim about the alleged mishandling of mail; and against any defendant for his third claim about the seizure of materials from his cell.

3.    The defendants are entitled to qualified immunity in their personal capacities.

Plaintiff names the defendants in their personal capacities, and the defendants assert the

---

[16] None of the policies challenged in this action have a VDOC Director's signature or evidence of a Director's approval or participation.

defense of qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Whether a defendant can claim qualified immunity is a pure question of law and is properly determined pretrial. Saucier v. Katz, 533 U.S. 194, 200-01 (2001) (modified by Pearson v. Callahan, 129 S. Ct. 808 (Jan. 21, 2009) (permitting lower courts the discretion to determine which qualified immunity prong to analyze first)).

Qualified immunity is an immunity from suit rather than a mere defense to liability. A plaintiff bears the burden to show that a defendant's conduct violated the plaintiff's right.[17] Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993). However, a defendant must demonstrate that the right was not clearly established at the time of the incident to receive qualified immunity. Henry v. Purnell, 501 F.3d 374, 378 (4th Cir. 2007). "The unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). See Anderson v. Creighton, 483 U.S. 635, 640 (1987) ("This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent.").

After reviewing plaintiff's claims and the relevant law at the time of the incidents, it is

---

[17] Because plaintiff failed to state a claim about his first claim about the alleged mishandling of mail, his third claim about the seizure of materials from his cell, and Johnson, Vass, and Rife, the defendants are also entitled to qualified immunity for those reasons.

clear plaintiff fails to show that a defendant's conduct violated his right to reasonable access to courts or that the methods used by the VDOC were contrary to clearly established law at the time. Accordingly, the defendants are entitled to qualified immunity in their personal capacities.

      a.     Plaintiff fails to show that a defendant's conduct violated plaintiff's right to reasonable access to courts.

Inmates have a constitutional right to reasonable access to courts to challenge their convictions or vindicate their constitutional rights. See Bounds v. Smith, 430 U.S. 817, 838 (1977). However, "Bounds did not create an abstract, freestanding right to a law library or legal assistance"; these options are means for ensuring "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds, 430 at 825). Thus, Bounds does not require a particular method to ensure reasonable access to courts but requires only a state-provided capability to bring an action related to a criminal appeal, collateral attack, or a civil rights violation. Id. at 356.

      i.     Plaintiff fails to establish the failure of prison officials to assist in the preparation and filing of meaningful legal papers.

The VDOC, PCC, and KMCC policies did not deny plaintiff reasonable access to courts. Instead, these policies facilitated plaintiff's access to legal materials and institutional attorneys to assist him with his direct appeal and state habeas petition.

VDOC DOP 822 was effective when plaintiff arrived at PCC and KMCC and through December 1, 2006. The policy allowed plaintiff to litigate on their own behalf and access institutional legal services as described by institutional operating procedures. The policy made a

facility's warden primarily responsibile for "ensuring compliance with this operating procedure at the institutional level." Furthermore, a facility's warden was responsible for ensuring VDOC staff's compliance with the policy.[18] On December 1, 2006, DOP 822 was superseded by DOP 861.3. This newer policy still provided that plaintiff may litigate on his own behalf, have access to legal services including the facility attorney and law library materials, and receive information on how to access legal services.

PCC IOP 867 prevented plaintiff from having physical access to the law library collections, but plaintiff could receive five legal materials for three days at a time by submitting a request to staff. As long as plaintiff returned the materials, he could request more materials. Furthermore, PCC IOP 867 allowed plaintiff to contact the institutional attorney to supplement access to legal information. The policy even provided plaintiff a procedure to complain about the lack of contact with an institutional attorney. Plaintiff admits that he wrote to one of the institutional attorneys but PCC staff allegedly told him that they did not have an institutional attorney at that time. However, plaintiff does not describe any effort to correct the problem or request PCC staff to provide a solution, as permitted by the policy.

Both KMCC IOP 867 and KMCC LOP 841.B, which were approved by defendant Huffman and former KMCC Wardens, authorized plaintiff to have access to legal materials. Plaintiff accessed legal materials with his Special Housing Law Library Request Forms that he sent via institutional mail to the Treatment Program Supervisor's office. Plaintiff received copies of his requested materials, not the actual books. These policies also provided the names and mailing addresses for the two institutional attorneys that plaintiff could contact to discuss legal

---

[18] Plaintiff did not name a PCC warden as a defendant.

matters.  Indeed, plaintiff wrote to one of the KMCC's institutional attorneys to discuss his legal questions, but plaintiff was dissatisfied with the attorney because he did not give plaintiff "actual assistance" to file pleadings.

It is clear that these policies do not violate Bounds' requirement for the VDOC to facilitate plaintiff's reasonable access to courts.  They provided plaintiff means to request legal materials from the institution's law libraries and from institutional attorneys.  Plaintiff's argument that Bounds requires prison officials to give plaintiff physical access to the books is not supported by law.  The policies permitted plaintiff to receive copies of his requested legal materials, and such access to legal materials, "rather than the capability of turning pages in a law library, . . . is the touchstone" of providing reasonable access to courts.  Lewis, 518 U.S. at 357.  Plaintiff also complains that he is not trained in law and did not know how to start researching his ideas, and he faults the exact-cite system for preventing him from discovering the alleged legal flaws in his criminal proceedings.  However, the Supreme Court disclaimed the premise that a "[s]tate must enable the prisoner to discover grievances, and to litigate effectively once in court" because "to demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires." Lewis, 518 U.S. at 354.

In conclusion, the VDOC, PCC, and KMCC policies did not unconstitutionally prevent plaintiff from receiving legal materials or from accessing institutional attorneys.  These policies provided means by which plaintiff could challenge his conviction.  Accordingly, plaintiff fails to establish a denial of reasonable access to courts.

      ii.     Plaintiff fails to establish some quantum of detriment caused by the challenged conduct of state officials that resulted in the interruption and/or delay of plaintiff's pending or contemplated litigation.

The right of reasonable access to courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Christopher v. Harbury, 536 U.S. 403, 415 (2002). Thus, a plaintiff must also "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued. . . ." Id. at 417 (internal footnote omitted). "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. at 416. Accordingly, in order to plead a backward looking denial of reasonable access to courts claim, a plaintiff must specifically identify a non-frivolous legal claim that a defendant's actions prevented him from litigating. Id. at 415-16; Lewis, 518 U.S. at 353 n.3. This requirement means the "inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions. . . . The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim." Godfrey v. Washington Cnty., Va., Sheriff, No. 7:06-cv-00187, 2007 U.S. Dist. LEXIS 60519, at *39, 2007 WL 2405728, at *13 (W.D. Va. Aug. 17, 2007) (citing Lewis, 518 U.S. at 351).

PCC IOP 867 was effective while plaintiff was at PCC during the thirty-day period in 2007 when he could appeal his conviction. However, it was not until May 2008 while he was at KMCC that plaintiff filed his first attempt at a pro se appeal of his conviction.[19] Plaintiff mailed

---

[19]After unsuccessfully trying to get his court-appointed defense counsel to file an appeal in August 2006, plaintiff had a non-attorney file on his behalf with the circuit court a motion to suspend judgment, which did not request

his pro se appeal documents in May 2008 to the wrong court, allegedly based on inaccurate information in the law library. However, May 2008 was long past the six-month period in which the Court of Appeals has the power to grant a belated appeal, even if plaintiff mailed his appeal to the correct court. Plaintiff admits that he knew he had an appeal available to him because he urged his counsel to file one on his behalf in August 2006. Plaintiff's decision to have a non-attorney file a motion to suspend judgment instead of a notice of appeal was a result of plaintiff's own decision; plaintiff does not allege any defect in reasonable access to courts as relating to his decision to file a "motion to suspend judgment."

Plaintiff argues that the alleged <u>Bounds</u> violations for his direct appeal occurred when the PCC and KMCC staff did not provide him with legal information or assistance to know which court to file his appeal paperwork while at PCC and KMCC. Plaintiff faults the PCC and KMCC staff for not providing reasonable access to legal materials for him to "properly and fully ascertain and assert" claims on direct appeal. (Second Am. Compl. 5.) Even if the law library provided plaintiff with the correct mailing address for the Court of Appeals by when he mailed his appeal documents in May 2008, it was still beyond the statutory period where he could receive a belated appeal, assuming he could overcome the contributory-negligence bar for belated appeals. <u>See</u> Va. Code § 19.2-321.1(D) (barring belated appeal when delay is partially attributable to appellant).

Furthermore, the claims plaintiff intended to argue on appeal had no chance of success. Plaintiff would have argued that his conviction violated due process because a grand jury must issue an indictment, he was denied access to information about the prison-mailbox rule, and his

appellate review.

sentence was in violation of his constitutional rights. Plaintiff complains that he knew "something was wrong with the indictment" but he could not discover the information to support his hunch. (Second Am. Compl. 6.) However, the claims plaintiff intended to raise on direct appeal would not have provided him any relief. Plaintiff's Alford plea foreclosed an ability to challenge his indictment. See, e.g., Mason v. Commonwealth, 219 Va. 1091, 1098, 254 S.E. 2d 116, 121 (1979); Terry v. Commonwealth, 30 Va. App. 192, 196-97, 516 S.E. 2d 233, 235-36 (Va. Ct. App. 1999) (stating guilty plea waived defenses that arose before the plea). The prison-mailbox rule has no obvious relevance to plaintiff's conviction, and he fails to describe how it would have been a reason to overturn his conviction. Plaintiff also fails to describe how his sentence violated a constitutional right beyond his mere conclusion.

The additional claims plaintiff intended to argue on habeas review also had no chance of success. Plaintiff argues that he would have raised the following claims in his state habeas petition if he had reasonable access to courts: his guilty plea was involuntary because defense counsel withheld information leading to a possible defense; counsel or the prosecutor unlawfully withheld DNA tests and misleadingly proffered evidence as blood stains; the indictment was invalid; counsel failed to file a notice of appeal or represent plaintiff at a post-trial hearing; and the circuit court failed to advise plaintiff of the disposition of his non-attorney's post-trial motion. However, the Supreme Court of Virginia already determined that plaintiff's plea was knowing and voluntary; counsel were not ineffective for failing to note an appeal; and that his knowing and voluntary guilty plea waived all non-jurisdictional defenses available prior to his guilty plea. Furthermore, the non-attorney's filing had no legal effect. See Kone, 272 Va. at 62-63, 630 S.E.2d at 745-46. Thus, all of these claims plaintiff says he would have brought had no

chance of success on habeas review, as already determined by the Supreme Court of Virginia.

In conclusion, the claims plaintiff says he would have raised on both direct appeal and on state habeas, if it were not for the allegedly deficient access to courts provided by PCC and KMCC staff, would not have entitled plaintiff to his requested relief. Therefore, the allegedly prevented claims had no reasonable chance of success and were based merely on hope.[20] Accordingly, plaintiff fails to establish a denial of reasonable access to courts.

      b.    The right plaintiff claims the defendants violated was not clearly established at the time of the events.

Plaintiff argues that the PCC's and KMCC's reliance on an exact-cite system and provision of copies of legal materials instead of physical access to them denied him reasonable access to courts. However, the unlawfulness of either of these methods was not apparent at that time. Plaintiff relies on <u>Knop v. Johnson</u>, 977 F.2d 1006 (6th Cir. 1992), and several other authorities, but they are not controlling in this circuit because <u>Lewis v. Casey</u> superseded them in 1996. Thus, the defendants did not violate clearly established law at the time of the events. Accordingly, the defendants are entitled to qualified immunity.

      4.    The defendants are entitled to sovereign immunity in their official capacities from damages and any request for injunctive relief is moot.

Defendants argue that they are immune from damages in their official capacities. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983 damages actions. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 70-71, n.10 (1989). Therefore, each defendant is immune to the extent that plaintiff is suing a defendant in an official

---

[20] Because none of the claims had any chance of success, plaintiff did not suffer prejudice as a result of the alleged taking of his CDs and newspaper articles kept to support these claims. More importantly, plaintiff fails to link any defendant to these alleged takings, which entitles them to qualified immunity for Claim Three.

capacity for damages. Plaintiff's transfer from PCC, KMCC, and the VDOC system also moots any injunctive relief sought against the defendants in their official capacities. See Uncumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) (collecting cases to support dismissal of injunctive and declaratory remedies as moot upon prisoner's transfer from facility of challenged action).

## III.

For the foregoing reasons, I grant the defendants' motions for summary judgment[21] and deny as moot plaintiff's various motions.[22]

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

**ENTER**: This 28th day of July, 2011.

Senior United States District Judge

---

[21] I note that whether plaintiff did or did not file copies of grievances with the court had no impact on this litigation, and the court granted every motion for an extension of time he filed. Furthermore, no Local Rule of this court requires pleadings from a prisoner proceeding pro se to be written in a particular color, with a particular instrument, or on particular paper. The court accepts both typed and handwritten pleadings, regardless to whether they are written on normal sized paper, and most, if not all, of his 500 pages of filings were on regular 8.5" x 11" paper. I further note that CM/ECF does not show that plaintiff's pleadings contain lead-pencil text, black-ink text, blue-ink text, blue-ink underlining and red-ink underlining.

[22] Plaintiff filed a motion to expand the record to admit records from plaintiff's state criminal proceedings (no. 101), filed a "motion for means to draft and submit motions" (no. 102), filed several motions to submit irregular motions or briefs (no. 103, 105, 106, 108, 111), and requested access to CM/ECF to electronically file and retrieve documents (no. 110). I deny the motions as moot because I already have access to pertinent records from the criminal proceedings and I do not require further documents from plaintiff in light of his already filed responses to the defendants' motions for summary judgment. Plaintiff did not request any additional extension of time, request leave to amend or supplement any response, file a copy of document he sought permission to file, or otherwise establish good cause to file out of time. Accordingly, no further response is necessary to adjudicate this case. Plaintiff does not need access to CM/ECF as he may send paper pleadings to the court for entry into CM/ECF and he could make handwritten copies of documents before filing them for his own record.